**MISSION INSURANCE COMPANY**

v.

**RYDER TRUCK RENTAL, INC., Thomas Arlie Sheffield, Mrs. Linda Mitchell Boswell, Modern Fibers, Inc., Katie Vera Davis, William Earl Ray.**

Civ. A. No. 80–539.

United States District Court,
N.D. Georgia,
Atlanta Division.

Oct. 8, 1982.

Samuel P. Pierce, Jr., W. Ray Eckl, Swift, Currie, McGhee & Hiers, Atlanta, Ga., for plaintiff.

J. Robert Persons, Frederick N. Gleaton, Hurt, Richardson, Garner, Todd & Cadenhead, Atlanta, Ga., for Ryder Truck.

David E. Krischer, Arrington, Rubin, Winter, Krischer & Goger, Atlanta, Ga., for Linda M. Boswell.

John A. Chandler, Nancy K. Rhoden, Sutherland, Asbill & Brennan, Atlanta, Ga., for Modern Fibers.

M. Scott Barksdale, Greer, Klosik & Daugherty, Atlanta, Ga., for Katie Vera Davis.

## ORDER

ORINDA D. EVANS, District Judge.

This is a suit for a declaratory judgment to resolve insurance and indemnity disputes emerging from an accident. The accident involved a tractor trailer rig rented to Defendant Modern Fibers, Inc. ("Modern Fibers") by Defendant Ryder Truck Rental, Inc. ("Ryder"). Defendant Sheffield is Modern Fibers' employee and was the driver of the rig. Modern Fibers has insurance under a policy with Plaintiff Mission Insurance Company ("Mission Insurance")[1] covering tractors and trailers leased to Modern Fibers under a master lease[2] with Ryder. Ryder is an additional insured under the Mission Insurance policy.

The tractor (as opposed to the trailer) being driven by Mr. Sheffield at the time of the accident was not, however, one of the regularly scheduled tractors under the master lease or the Mission Insurance policy. At some time prior to the accident, the scheduled tractor had been involved in another collision. This had caused Ryder to furnish its lessee, Modern Fibers, with a replacement tractor. Modern Fibers paid extra rent for this replacement vehicle. At the time Modern Fibers rented the replacement from Ryder, it executed a separate "rental agreement."[3] This rental agreement provided that Ryder would get separate insurance coverage on the replacement tractor. In fact, Modern Fibers paid a premium to Ryder for this specific insurance.

Ryder did not purchase a specific insurance policy to cover the replacement tractor. At the time of the accident it did, however, have a comprehensive automobile liability policy with National Union Fire Insurance Company ("National Union").[4] This policy insures Ryder against liability for damages arising from ownership, maintenance or use of vehicles, including its tractors. The National Union policy makes entities which lease vehicles from Ryder additional insureds (see Endorsements Nos. 9 and 13), but also arguably excludes the tractor involved here from coverage under an exclusion pertaining to use of the tractor along with a trailer not covered by "like insurance in the company." See Section II "Persons Insured", (iv). The National Union policy may insure Ryder for claims for breach of contract arising out of its leasing operation. See National Union Policy, Endorsement No. 8.

National Union has not been made a party to this lawsuit. Ryder's position herein is that the National Union policy does not provide any coverage to Modern Fibers for the accident in question on account of the referenced exclusion.

To complicate this matter further, although all parties agree that at the time the Mission Insurance policy was issued to Modern Fibers, Ryder was considered an additional insured, the actual policy did not so state. This was a function of the fact that Mission Insurance and Ryder were unable to agree on the precise wording relative to the extent of Ryder's coverage. On July 13, 1979—just six days before the accident—Ryder wrote to Mission Insurance's agent asking for clarification as to whether "rental and substitute vehicles" were covered under the policy.[5] That letter enclosed Ryder's proposed form endorsement which made it clear that rental and substitute

---

**1.** Exhibit A, Mission Insurance Company's Motion for Summary Judgment ("Mission Insurance Motion").

**2.** Exhibit C, Mission Insurance Motion.

**3.** Exhibit D, Mission Insurance Motion.

**4.** Exhibit B, Mission Insurance Motion.

**5.** Exhibit J, attached to Supplemental and Amended Motion of Ryder Truck Rental, Inc. for Summary Judgment.

vehicles were covered.[6] Mission Insurance did not respond to this letter prior to the time of the accident. Quite some time after the accident, Mission Insurance issued a form endorsement naming Ryder as an additional insured.[7] It purported to be retroactive to the date of issuance of the policy, but contained language which limited Ryder's coverage on rental and substitute vehicles to those situations in which Modern Fibers had contracted to obtain the primary insurance on the vehicle.

Three separate lawsuits were instituted by parties who had been injured in the accident, which was a multi-vehicle collision. These lawsuits are: (1) *Boswell v. Modern Fibers, Inc., Ryder Truck Rental, Inc. and Thomas Arlie Sheffield,* Civil Action No. C–55986, Superior Court of Fulton County; (2) *Davis v. Modern Fibers, Inc., Thomas Arlie Sheffield and Ryder Truck Rental, Inc.,* Civil Action No. C–75206, Superior Court of Fulton County; and (3) *Ray v. Ryder Truck Rental, Inc., B.F. Goodrich Company and Eaton Corporation,* Case No. 81 134 9 CA 13, Circuit Court of the Eleventh Judicial Circuit of Dade County, Florida.

Modern Fibers made demand upon Ryder to defend and indemnify it in the Boswell and Davis suits. It also made a similar demand on Mission Insurance. Mission Insurance proceeded to defend Modern Fibers in the Boswell and Davis suits, but then made demand upon Ryder to take over the defense and indemnify[8] Modern Fibers for any judgment in those actions. Mission Insurance's position is simply that Ryder agreed to get primary insurance when it rented the tractor to Modern Fibers under the separate rental agreement. Ryder's response is basically to admit that it agreed to get such primary insurance, but to point out that in the absence of such insurance, it is

Mission's obligation to defend and indemnify its insured.

Ryder on the other hand has demanded that Mission Insurance defend and indemnify it in all three lawsuits. It points out that it is an additional insured under the Mission policy. Mission Insurance's response is that the endorsement to the policy (that is Mission Insurance's own endorsement, not the one tendered by Ryder) excludes coverage to Ryder because of the limiting language contained therein. Mission Insurance's second, alternative argument, is that if Ryder is entitled to coverage, that Mission's coverage to Ryder must be regarded as excess to the coverage Ryder promised to obtain.

In the Ray case, Ryder has also demanded that Mission Insurance defend and indemnify it. Mission Insurance makes the same arguments here as it does in the Davis and Boswell cases, but also makes an additional argument. Mission Insurance additionally argues that no coverage is provided for Ryder as to the particular allegations contained in Ray, which basically assert faulty maintenance of the tractor by Ryder.

I. Mission Insurance has the Primary Coverage on the Trailer

█ Beginning with an easy point, it is clear that Mission Insurance has insurance coverage on the trailer, which was specifically scheduled under the master lease between Modern Fibers and Ryder. Ryder never agreed to get any additional insurance on the trailer. Therefore, if the National Union policy provides any coverage on the trailer (none has been pointed out to the Court), such coverage would clearly be excess. Therefore, some contribution by Mission Insurance to the Davis and Boswell settlements is appropriate.

---

6. Exhibit A, attached to Supplemental and Amended Motion of Mission Insurance Company, Inc. for Summary Judgment.

7. Endorsement A626 included within Exhibit A, Mission Insurance Motion.

8. The Boswell and Davis suits have now been settled. A pool of funds for the settlements was furnished by Mission Insurance and Ryder. In a brief filed March 5, 1982, Mission Insurance indicates it is willing to assume responsibility for ½ of the settlement funds because it admittedly had the primary coverage on the trailer.

**558**

## II. Modern Fibers is Covered Under the Mission Insurance Policy for Liability Arising out of Operation of the Replacement Tractor

■ The Mission Insurance policy provides coverage to Modern Fibers for damages it may be required to pay on account of bodily injury or property damage "arising out of the ownership, maintenance or use ... of any automobile." Thus, Modern Fibers, the insured, is entitled to coverage.

## III. Ryder is an Additional Insured Under the Mission Insurance Policy

The reason Ryder is an additional insured is simply because all the parties agreed, before the accident, that it would be.

## IV. Although Ryder is an Additional Insured Under the Mission Insurance Policy, that Policy Provides No Coverage to Ryder with Respect to Liability arising from Operation of the Replacement Tractor Involved in the Accident

■ The Mission Insurance policy is a contract between Mission Insurance and Modern Fibers. In order to discern the extent of coverage afforded Ryder under that agreement, the Court first looks to see if the intent of the parties in that regard can be discerned from the four corners of the instrument, as it existed before the accident. As previously noted, the policy originally issued said nothing about Ryder being an additional insured. No endorsements were issued which dealt with this matter, prior to the accident. There was a certificate of insurance[9] issued by Mission Insurance's agent which was received by Ryder on July 6, 1979, prior to the accident. This certificate of insurance contains a standard disclaimer that it is issued for information only and does not "amend, extend or alter the coverage afforded by the policies." However, the certificate of insurance also contains the following statement typed on the certificate of insurance: "It is agreed that Ryder Truck Rental, Inc. is an Additional Insured on the Automobile Liability and a Loss Payee on the Physical Damage as respects any vehicle leased to the Named Insureds for a term of not less than one year." This document, as noted, is not a part of the agreement between Mission Insurance and Modern Fibers. Therefore, it will not be treated as material within the four corners of the document.

Since the parties' intention regarding the extent of coverage for Ryder as an additional insured cannot be determined from the four corners of the insurance contract as it existed before the accident, the Court next looks to see whether the intent of the parties may be otherwise discerned. Since the two parties to the contract are Mission Insurance and Modern Fibers, it is the expressed intent of those two parties which is controlling. For purposes of summary judgment, only those intentions of the parties clearly expressed prior to the accident are appropriately considered. The aforementioned certificate of insurance certainly reflects Mission Insurance's intent that Ryder be an additional insured. However, that certificate of insurance further reflects Mission Insurance's intent that this coverage be extended only to "any vehicle leased to the Named Insureds for a term of not less than one year." Therefore, the Court concludes that Mission Insurance's intent as reflected in the certificate of insurance was not to extend Ryder coverage on short term rentals.[10]

The Court now looks to see if it can discern what Modern Fibers' intent was regarding the extent of Ryder's coverage when the insurance arrangements were made with Mission Insurance. It is noted that Modern Fibers' position in this litigation is basically that of a neutral party. It does not care who provides coverage, so long as its interests are protected. Therefore, Modern Fibers has taken no position regarding the exact extent of Ryder's coverage as additional insured under the Mission Insurance policy.

**9.** Exhibit E, Mission Insurance Motion.

**10.** The tractor in question here was rented to Modern Fibers under a rental agreement which on its face called for the tractor to be returned to Ryder within one month.

There is, however, a document in the record which reflects Modern Fibers' presumed intent regarding the extent of coverage to be afforded to Ryder. That document is the master lease agreement which contains contractual provisions requiring Modern Fibers to get insurance coverage on the leased tractors and trailers. In the absence of evidence in the record to the contrary, the Court will presume that Modern Fibers intended to furnish to Ryder exactly the insurance coverage called for by the master lease agreement, no more and no less.

Paragraph 10A(1) of the master lease provides that Modern Fibers is required to obtain, at its own expense, a standard policy of automobile liability insurance "covering both Ryder and customer as insurers for the ownership, maintenance, use or operation of the Vehicles *and any vehicle being provided as a substitute therefor.*" (emphasis added). Therefore, the lease only required Modern Fibers to obtain insurance on "Vehicles" and "substitute vehicles." "Vehicles" is a defined term in the lease. It means scheduled vehicles. *See* Master Lease Agreement, ¶ 1A. "Substitute vehicles" is not a defined term but is a term which has an obvious meaning within the framework of the lease. Paragraph 6 of the master lease captioned "Substitution" clearly states that a "substitute vehicle" is one supplied to Modern Fibers at no extra charge when the scheduled vehicle is out of service for ordinary maintenance. Paragraph 6 goes on to state that when a scheduled vehicle is out of service because of damage resulting from collision or upset, Ryder will attempt to supply a "replacement vehicle" and that if it is able to supply a replacement vehicle, it will be at an extra charge to Modern Fibers. In addition, the same section states that when "substitute vehicles" are provided to Modern Fibers, they "shall be subject to all the terms and conditions of this agreement." No similar provision appears regarding replacement vehicles. These provisions appear to reflect an intention that when a replacement vehicle is provided, the replacement will be provided pursuant to a separate contract and

that the provisions of the master lease will not control. The fact that Ryder and Modern Fibers did in fact treat the replacement vehicle involved here as a separate contractual matter further reinforces the Court's impression in this regard.

The Court finds that Modern Fibers did not intend to provide insurance to Ryder as an additional insured under the Mission Insurance policy for liability arising from the operation of a "replacement" vehicle as opposed to a substitute vehicle, because it was not required to do so.

Since Mission Insurance's expressed intent was not to cover short term rentals, which presumably would include rentals of "replacement vehicles," and Modern Fibers' expressed intent was not to provide coverage on replacement vehicles, the Court concludes that the mutual intent of the contracting parties was not to provide coverage for the replacement tractor involved in the instant case.

V. The Rental Agreement Between Ryder and Modern Fibers with Respect to the Replacement Tractor Required Ryder to get Primary Liability Insurance on the Tractor Covering Modern Fibers' Interest

█ When Modern Fibers and Ryder executed the separate rental agreement on the replacement tractor, Modern Fibers was presented with two options under the terms of that agreement. One was to furnish its own liability insurance on the subject tractor. The other was to require Ryder to furnish coverage, for a specified additional charge. Modern Fibers' employee initialed the appropriate space on the rental agreement to indicate its election to rely upon Ryder to furnish the coverage. Modern Fibers paid the extra charge for the insurance premium.

The foregoing indicates a mutual intention on the part of Ryder and Modern Fibers that Ryder would obtain specific liability insurance coverage with respect to the replacement tractor. This clear picture is clouded, however, by the provisions of Paragraph 6 of the rental agreement, as follows:

In the event Renter is also Lessee pursuant to Owners "Truck Lease and Service Agreement" the insurance provisions set forth in the "Truck Lease and Service Agreement" shall extend to and cover the Vehicle rented hereunder. In the event there are inconsistent or conflicting terms and conditions relation to the insurance provisions between this Agreement and those set forth in said "Truck Lease and Service Agreement" the insurance provisions set forth in the "Truck Lease and Service Agreement" shall control and apply to the Vehicle rented hereunder.

Certainly Modern Fibers was a lessee pursuant to Ryder's "Truck Lease and Service Agreement," referred to herein as the master lease. However, the applicability of the quoted provisions also depends on the tacit requirement that the vehicle being rented under the rental agreement is also subject to the provisions of the master lease. The Court has already found that the provisions of the master lease simply do not apply in any way to the replacement tractor involved here, since the replacement tractor was neither leased to Modern Fibers under the master lease nor insured by Mission Insurance pursuant to the requirements of that lease.[11] Therefore, the effect of the rental agreement was to require Ryder to get the primary insurance on the replacement tractor to protect Modern Fibers' interest. As to Ryder's interest, the insurance to have been obtained was not only the primary insurance, but also the only insurance.

VI. A Ruling on Whether the National Union Policy Provides Any Coverage for the Replacement Tractor and Also on Whether Ryder Provides Any Coverage for the Replacement Tractor is Deferred

■ Ryder has argued strenuously in its briefs that the National Union policy provides no coverage to Modern Fibers for the incident in question. That may be true. However, it is not clear why Ryder's interests are advanced by this argument. It is noted that the National Union policy contains a $250,000 deductible; perhaps Ryder does not really have a stake in any coverage issue being determined in its favor against National Union. However, the precise reason for National Union's omission as a party herein is not clear to the Court. It may not be appropriate to declare whether or not there is any coverage under its policy in these circumstances.

Mission Insurance has argued that Ryder should be estopped to deny the availability of other insurance coverage, since it did contract to obtain such coverage. However, it has not really cited any authority for this proposition. The Court has also considered treating Ryder as an insurance company. After all, Ryder did collect a premium. Also, it is noted that now that the Davis and Boswell suits have been settled, Ryder has in fact provided a pool of funds for the settlements, just as an insurance company would. However, the latter feature is involved only in the post-litigation arrangements of the parties; it might not be fair to Ryder to take this approach. Mission Insurance has not cited the Court to any authority which supports the proposition that a non insurance company may be treated as an insurance company for purposes of determining whether certain coverage may be considered excess rather than primary.

The Court defers a final ruling on these matters for fifteen (15) days in order to give the parties an opportunity to brief them further, should they desire to do so.

VII. The Mission Insurance Policy Provides No Coverage to Ryder for the Claims Made in the Ray Case

■ The allegations made against Ryder in the Ray case differ substantially from those made in Davis and Boswell. Plaintiff Ray contends Ryder was negligent in failing to properly inspect and maintain the tractor and also in failing to instruct the driver concerning proper use of the braking system. It alleges further that Ryder

---

11. Similarly, there is no conflict in the provisions of the two documents relative to insurance.

breached implied warranties of merchantability when it leased the tractor to Modern Fibers.

Mission Insurance argues that its policy simply does not provide coverage to Ryder for the type of claims being made in the Ray case. The Court agrees.

The Mission Insurance policy was issued to Modern Fibers, a "manufacturer of yarn for the carpet industry." *See* Mission Insurance Policy, Declaration-Part B. The insurance furnished an additional insured under an insurance policy is, by its nature, a derivative form of insurance. Generally, the rights of an additional insured can be no greater than those of the named insured. 12 Couch on Insurance, 45:307, at 671 (1981 ed.). In a situation where no additional premium is paid to include the additional insured on the policy, the scope of the risk to the insurer should not be enlarged by implication.

Mission Insurance did, of course, insure Modern Fibers for liability arising out of its "maintenance and repair" of vehicles. However, Mission Insurance surely took into account in calculating the premium for the policy the fact that Modern Fibers is not in the business of maintaining and repairing vehicles. Ryder, on the other hand, specializes in offering vehicles for rental or leasing. Therefore, if the coverage of the Mission Insurance policy is extended to cover Ryder's failure to properly maintain the leased vehicles, the nature and scope of the risk undertaken by Mission Insurance would make a qualitative change. Therefore, the Court finds that Mission Insurance did not undertake to insure Ryder against the types of claims raised in the Ray litigation.

VIII. Modern Fibers has No Obligation to Defend Ryder or Hold it Harmless Under the Provisions of the Separate Rental Agreement

█ Paragraph 8(b) of the rental agreement executed between Modern Fibers and Ryder with respect to the replacement tractor provides generally that Modern Fibers agrees to hold Ryder harmless and to indemnify it against loss and damage "unless specified otherwise on Page 1 of this agreement." The Court concludes the rental agreement does "specify otherwise," in that page 1 contains Modern Fibers' election to have Ryder provide separate insurance coverage. Therefore, Modern Fibers is not contractually obligated to indemnify or hold Ryder harmless under the rental agreement.

In summary, the Court does hereby declare the rights and obligations of the parties as follows:

(1) The liability of both Modern Fibers and Ryder arising out of operation of the trailer is covered under the Mission Insurance policy.

(2) The liability of Modern Fibers arising out of operation of the replacement tractor is covered under the Mission Insurance policy.

(3) The liability of Ryder arising out of operation of the replacement tractor is not covered under the Mission Insurance policy.

(4) The rental agreement with respect to the replacement tractor required Ryder to get primary liability insurance on the tractor covering Modern Fibers' interests.

(5) The Mission Insurance policy provides no coverage to Ryder for the claims made in the Ray case.

(6) Modern Fibers has no obligation to defend Ryder or hold it harmless for any claims arising out of the accident.

(7) A ruling on the question of whether the National Union policy provides any coverage for liability arising out of the use of the replacement tractor; whether Ryder provides any coverage for liability arising out of the use of the replacement tractor; and the derivative question of whether such coverage (if any) as to Modern Fibers' interests is primary or excess, and any related apportionment question is hereby DEFERRED for fifteen (15) days from date of entry of this Order.